UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

CHRISTOPHER W.,[1]

      Plaintiff,

   v.

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.

6:24-CV-6295-LJV
DECISION & ORDER

---

On May 10, 2024, the plaintiff, Christopher W. ("Christopher"), brought this action

under the Social Security Act ("the Act").  Docket Item 1.  He seeks review of the

determination by the Commissioner of Social Security ("Commissioner") that he was not

disabled.[2]  *Id.*  On July 30, 2024, Christopher moved for judgment on the pleadings,

Docket Item 6; on August 9, 2024, the Commissioner responded and cross-moved for

judgment on the pleadings, Docket Item 9; and on August 23, 2024, Christopher replied,

Docket Item 10.

---

[1] To protect the privacy interests of Social Security litigants while maintaining
public access to judicial records, this Court will identify any non-government party in
cases filed under 42 U.S.C. § 405(g) only by first name and last initial.  Standing Order,
Identification of Non-Government Parties in Social Security Opinions (W.D.N.Y. Nov.
18, 2020).

[2] Christopher applied for Supplemental Security Income ("SSI"), which is paid to
a person with a disability who also demonstrates financial need.  42 U.S.C. § 1382(a).

For the reasons that follow, this Court denies Christopher's motion and grants the Commissioner's cross motion.[3]

## **STANDARD OF REVIEW**

"The scope of review of a disability determination . . . involves two levels of inquiry." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). The court "must first decide whether [the Commissioner] applied the correct legal principles in making the determination." *Id*. This includes ensuring "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the Social Security Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citation modified) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)). Then, the court "decide[s] whether the determination is supported by 'substantial evidence.'" *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)).

"Substantial evidence" means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "The substantial evidence standard means once an ALJ finds facts, [the court] can reject those facts only if a reasonable fact finder would *have to conclude otherwise*." *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (citation modified) (emphasis in original); *see McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014) ("If evidence is susceptible to more than one rational

---

[3] This Court assumes familiarity with the underlying facts, the procedural history, and the decision of the Administrative Law Judge ("ALJ") and refers only to the facts necessary to explain its decision.

interpretation, the Commissioner's conclusion must be upheld.")  But "[w]here there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."  *Johnson*, 817 F.2d at 986.

## **DISCUSSION**

### I.    **THE ALJ'S DECISION**

On August 14, 2023, the ALJ found that Christopher had not been under a disability since December 22, 2021, the date his application was filed.  *See* Docket Item 4 at 34.  The ALJ's decision was based on the five-step sequential evaluation process under 20 C.F.R. §§ 404.1520(a) and 416.920(a).  *See id.* at 26–27.

At step one, the ALJ found that Christopher had not engaged in substantial gainful activity since filing his application.  *Id.* at 27.  At step two, the ALJ found that Christopher suffered from two severe, medically determinable impairments: "seizure disorder status-post head injury and polycystic kidney disease."  *Id.*

At step three, the ALJ found that Christopher's severe, medically determinable impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  *See id.* at 28–29.  More specifically, the ALJ found that Christopher's impairments did not meet or medically equal listing 1.15 (disorders of the skeletal spine resulting in compromise of a nerve root) or 11.02 (epilepsy).  *Id.* at 28.

3

The ALJ then found that Christopher had the residual functional capacity

("RFC")[4] to "perform light work as defined in 20 C[.]F[.]R[. §] 416.967(b)" except that:

> [Christopher] could occasionally lift and/or carry 20 pounds; frequently lift and/or carry 10 pounds; stand and/or walk about six hours in an eight[-]hour day; sit about six hours in an eight[-]hour day; occasionally push and/or pull 20 pounds; occasionally climb ramps and/or stairs, balance, stoop, kneel, crouch, and crawl; never climb ladders/ropes/scaffolds; and never work at unprotected heights or near moving machinery.

*Id.* at 29.

At step four, the ALJ found that Christopher had no past relevant work. *Id.* at 32.

But given Christopher's age, education, and RFC, the ALJ found at step five that

Christopher could perform substantial gainful activity as a housekeeper, general

cashier, or small product assembler. *Id.* at 33–34; *see Dictionary of Occupational Titles*

323.687-014, 1991 WL 672783 (Jan. 1, 2016); *id.* at 211.462-010, 1991 WL 671840

(Jan. 1, 2016); *id.* 706.684-022, 1991 WL 679050 (Jan. 1, 2016). The ALJ therefore

found that Christopher had not been under a disability since his application was filed.

*See* Docket Item 4 at 34.

## II.    ALLEGATIONS

Christopher argues that the ALJ erred in two ways. *See* Docket Item 6-1 at 6–9.

First, he argues that the ALJ improperly evaluated the opinions of Stephen Schultz,

M.D., and Michael Hudson, M.D. *Id.* at 6–8. Second, he argues that the ALJ failed to

---

[4] A claimant's RFC is the most "an individual can still do despite his or her limitations . . . in an ordinary work setting on a regular and continuing basis." SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996). "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." *Id.*; *see Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999).

reconcile the RFC with limitations in the opinion of Harbinder Toor, M.D.—an opinion the ALJ found "generally persuasive." *Id.* at 8–9. For the reasons that follow, this Court disagrees.

### III.   ANALYSIS

#### A.  Dr. Schultz's and Dr. Hudson's Opinions

For claims filed on or after March 27, 2017, such as Christopher's, an ALJ no longer "defer[s] or give[s] any specific evidentiary weight, including controlling weight, to any medical opinion[s] or prior administrative medical finding[s], including those from [a claimant's] medical sources." *Angela H.-M. v. Comm'r of Soc. Sec.*, 631 F. Supp. 3d 1, 7 (W.D.N.Y. 2022) (citation modified) (quoting 20 C.F.R. §§ 404.1520c(a), 416.920c(a)). Instead, an ALJ evaluates the opinion evidence and "articulate[s] . . . how persuasive [he or she] finds the medical opinions in the case record." *Id.*

The regulations list five factors for an ALJ to consider when evaluating a medical opinion: (1) the amount of evidence the source presents to support his or her opinion; (2) the consistency between the opinion and the record; (3) the treating provider's relationship with the claimant, including the length, frequency, purpose, and extent of the relationship; (4) the treating provider's specialization; and (5) any other factors that "tend to support or contradict" the opinion. 20 C.F.R. § 404.1520c(c)(1)-(5). An ALJ is required to "explain how [he or she] considered the supportability and consistency factors" because they are "the most important factors," and "may, but [is] not required to, explain how [he or she] considered the [remaining] factors." *Id.* § 404.1520c(b)(2).

With respect to supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her

medical opinion[] or prior administrative medical finding[], the more persuasive the medical opinion[] or prior administrative medical finding[] will be." *Id.* § 404.1520c(c)(1). As to consistency, "[t]he more consistent a medical opinion[] or prior administrative medical finding[] is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion[] or prior administrative medical finding[] will be." *Id.* § 404.1520c(c)(2). In other words, supportability addresses how well a source explains and provides evidence for his or her opinion, and consistency addresses whether an opinion fits with the rest of the medical record. *See Spottswood v. Kijakazi*, 2024 WL 89635, at *1 (2d Cir. Jan. 9, 2024).

On April 4, 2023, Dr. Schultz completed a physical RFC questionnaire on Christopher's behalf. *See* Docket Item 4 at 764–67. Dr. Schultz opined that Christopher could sit for twenty minutes at a time and for two hours in an eight-hour workday, could stand for five minutes at a time and for less than two hours in an eight-hour workday, and needed a ten-minute walking break every forty-five minutes. *Id.* at 765. Dr. Schultz also opined that Christopher could never twist, stoop, crouch, or climb ladders and never lift more than twenty pounds. *Id.* at 767. Dr. Schultz concluded that Christopher's symptoms would frequently interfere with his attention and concentration and that he was "incapable of even 'low stress' jobs." *Id.*

That same day, Dr. Schultz wrote a letter discussing Christopher's functional capacity. *See* Docket Item 4 at 750. Dr. Schultz explained that Christopher had "a seizure disorder, so any manual labor job could pose risks to him and others around him." *Id.* Dr. Schultz also explained that Christopher had "a brain hemorrhage, which caused his seizures, as well as blackouts, and heightened sensitivity to environmental

6

stimuli"; that he had "polycystic kidney disease"; and that he experienced "low back pain which [wa]s triggered [b]y many simple manual tasks."  *Id.*  Dr. Schultz concluded that Christopher was "not capable of employment of any kind for which he [wa]s currently qualified."  *Id.*

The ALJ found that Dr. Schultz's opinion and letter were "not persuasive since [Dr. Schultz] consider[ed] non-medical factors such as an inability to maintain employment."  *Id.* at 31.  The ALJ found that "there [wa]s no evidence to support such restrictive limitations [in] sitting, standing, and walking as exams in the record noted normal gait and full strength in the extremities."  *Id.*  The ALJ also found that there was "no evidence to support excessive absences, a complete inability to perform postural limitations [sic], and no evidence of reduced strength in the upper extremities to support such restrictive limits [in] lifting and carrying."  *Id.*

On May 25, 2023, Dr. Hudson completed a physical RFC questionnaire on Christopher's behalf.  *See id.* at 772–75.  Dr. Hudson opined that Christoper suffered from back pain that would occasionally interfere with his attention and concentration at work.  *Id.* at 772–73.  For the remainder of the questionnaire, however, Dr. Hudson wrote either "[d]id not evaluate" or "[u]nknown."  *See id.* at 773–75.  Likewise, Dr Hudson left blank whether his patient was "a malingerer."  Id. at 773.

The ALJ found that Dr. Hudson's opinion was "not persuasive," noting that he was "generally unwilling and or unable to provide functional capabilities and limitations." *Id.* at 31.  The ALJ also found that Dr. Hudson's "opinion that [back] pain occasionally interfered with [Christopher's] ability to perform simple tasks [wa]s not persuasive as . . . imaging and exams of the spine were generally normal."  *Id.* at 31–32.

Moreover, in evaluating Dr. Schultz's opinion and letter, the ALJ noted that Lara Busch, NP, a nurse practitioner who worked with Dr. Hudson, *see id.* at 608–67, found "that [Christopher] could lift and carry at least 20 pounds," *id.* at 31.  In her office record, NP Busch noted that Christopher "[wa]s not supposed to be lifting heavy loads" but hurt his back while doing just that "as an overnight stocker at Walmart."  *Id.* at 654.  She also noted that Christopher wanted "to return to work," that his employer asked for "an updated letter regarding work restrictions," and that his neurologist said that he could not "lift objects that are greater than 25 pounds."  *Id.*  NP Busch therefore completed a form "requesting light duty for [Christopher and] no lifting greater than 20 [pounds]" through January 2024.  *Id.*

Christopher argues that in evaluating Dr. Schultz's and Dr. Hudson's opinions, the ALJ's discussion of the supportability and consistency factors was lacking.  *See* Docket Item 6-1 at 7–8.  More specifically, Christopher argues that the ALJ was required to but "failed to . . . acknowledge the consistency" between these opinions.  *Id.* at 7.  And Christopher says that "[*b*]*oth* the factors of supportability and consistency 'require comparison of the medical opinions with other medical sources.'"  *Id.* (citation modified) (emphasis in original).

But contrary to Christopher's suggestion, an ALJ need not address the consistency or inconsistency between every medical opinion and every other medical opinion; instead, the regulations require only that the ALJ address the consistency of the opinions with the rest of the record.  *See Rushford v. Kijakazi*, 2023 WL 8956622, at *2 (2d Cir. Dec. 28, 2023) ("As required, the ALJ addressed each opinion in turn, explaining why—or why not—he found each opinion to be 'supported' by the record and

'consistent' with the other evidence."); *David C. v. Comm'r of Soc. Sec.*, 2024 WL 376598, at *4 (W.D.N.Y. Feb. 1, 2024) ("Notwithstanding the ALJ's apparent reference to the consistency between the opinions . . ., he was not required to specifically assess the consistency between their opinions as long as he considered their consistency with the record as a whole."); *Darla W. v. Comm'r of Soc. Sec.*, 2021 WL 5903286, at *9 (N.D.N.Y. Dec. 14, 2021) ("The consistency factor does not measure whether a medical opinion is consistent with a single other medical opinion—it measures whether the medical opinion is consistent with all medical and nonmedical evidence in a claim."). And the ALJ did exactly that.

For example, and as noted above, the ALJ found that Dr. Hudson's opinion was inconsistent with "imaging and exams of the spine," which "were generally normal." Docket Item 4 at 31–32.  The ALJ found similarly that Dr. Schultz's opinion was inconsistent with "exams in the record [that] noted normal gait and full strength in the extremities" and with NP Busch's finding that Christopher "could lift and carry at least 20 pounds." *Id.* at 31.  The ALJ thus explicitly addressed the consistency of the opinions with the other evidence in the record.

Of course, the ALJ could have—and perhaps should have—discussed the regulatory factors in greater detail.  But when an ALJ's reasoning can be gleaned from the record, additional discussion is not required.  *See Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983) ("When, as here, the evidence of record permits us to glean the rationale of an ALJ's decision, we do not require that he have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability.").  In other words,

while the ALJ could have discussed each treatment note and each medical record supporting or not supporting Dr. Schultz's and Dr. Hudson's opinions in detail, the ALJ was not required to do that. *See Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) ("[A]n ALJ is not required to discuss every piece of evidence submitted. An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered." (citation modified)).

What is more, Christopher overstates the "consistency" between the opinions of Dr. Schultz and Dr. Hudson. Dr. Schultz found that Christopher was "not capable of employment of any kind," Docket Item 4 at 750, while Dr. Hudson opined that Christoper suffered from back pain that would only occasionally interfere with his attention and concentration at work, *id.* at 772–73. Moreover, as the ALJ noted, Dr. Hudson could not or would not provide any specific "functional capabilities and limitations." *See id.* at 31, 773–75. And although both opinions might suggest some limitations in Christopher's ability to work, other opinions and medical evidence suggested otherwise, as the ALJ explicitly noted. *See id.* at 30 (finding Dr. Toor's opinion "generally persuasive"); *id.* at 32 (finding several opinions, including two opinions that Christopher had no exertional limitations, not persuasive because Christopher had some exertional limitations).

In sum, the ALJ appropriately reviewed the supportability and consistency of Dr. Schultz's and Dr. Hudson's opinions in light of their own records and the other evidence in the record. *See Spottswood*, 2024 WL 89635, at *1. And the ALJ gave good reason for discounting those opinions, just as he gave good reason for discounting the opinions of other physicians who found Christopher not to be limited at all. *See* Docket Item 4 at

10

30–32. Christopher's argument that the ALJ improperly evaluated Dr. Schultz's and Dr. Hudson's opinions therefore lacks merit.

### B. Dr. Toor's Opinion

An ALJ must "weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013); *accord Schillo v. Kijakazi*, 31 F.4th 64, 78 (2d Cir. 2022). But that does not mean that an RFC must "perfectly correspond with any of the opinions of medical sources cited in [an ALJ's] decision," *Matta*, 508 F. App'x at 56, or even be based on opinion evidence, *see Rubin v. Martin O'Malley, Comm'r of Soc. Sec.*, 116 F.4th 145, 155 (2d Cir. 2024). So long as an ALJ considers all the medical evidence and appropriately analyzes any medical opinions, an RFC consistent with the record is not error. *See* 20 C.F.R. § 416.945; *see also Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2019) (holding that remand is not necessary "[w]here an ALJ's analysis at Step Four regarding a claimant's functional limitations and restrictions affords an adequate basis for meaningful judicial review, applies the proper legal standards, and is supported by substantial evidence").

On June 16, 2022, Dr. Toor completed an internal medicine examination of Christopher. *See* Docket Item 4 at 361–63. Dr. Toor diagnosed Christopher with a history of epilepsy, head injury, polycystic kidney disease, pain in the abdomen and lower back, hypertension, and mental health issues. *See id.* at 363. Dr. Toor opined that Christopher had "moderate limitation[s in] standing, walking, sitting, bending, [and] lifting because of pain in the abdomen and the back due to polycystic kidney disease."

11

*Id.*  And Dr. Toor concluded that Christopher "should avoid heights or operating machinery because of [his] history of epilepsy."  *Id.*

Christopher argues that despite finding Dr. Toor's opinion "generally persuasive," the ALJ failed to address limitations in that opinion—that is, "moderate limitation[s in] standing, walking, sitting, bending, and lifting."  Docket Item 6-1 at 8.  But the RFC restricted Christopher to "light work."  Docket Item 4 at 29.  And courts in this Circuit have repeatedly found such RFC restrictions sufficient to account for moderate limitations in those areas.  *See, e.g.*, *White v. Berryhill*, 753 F. App'x 80, 82 (2d Cir. 2019) (concluding that "moderate limitations in standing, sitting, and performing other activities" were consistent with light work) (citation modified); *Edward J. v. Comm'r of Soc. Sec.*, 2026 WL 183492, at *4 (W.D.N.Y. Jan. 23, 2026) ("[M]oderate limitations in walking, standing, or lifting are consistent with an RFC for light work.") (citation modified); *Stacie L. S. v. Comm'r of Soc. Sec.*, 2025 WL 2933283, at *11 (N.D.N.Y. Sept. 2, 2025) ("[A]n RFC limiting an individual to light work accommodates moderate postural restrictions on activities such as bending.").  So the restrictions incorporated in the RFC—that Christopher could perform only "light work"—accounted for the limitations in Dr. Toor's opinion.  *See* Docket Item 4 at 29.

The ALJ also explicitly incorporated other findings of Dr. Toor into the RFC.  For example, Dr. Toor found that Christopher "should avoid heights or operating machinery because of [his] history of epilepsy"—that is, seizures—and the RFC provided that Christopher could "never work at unprotected heights or near moving machinery."  *Compare id.* at 363 *with id.* at 29.   And the RFC further addressed the postural limitations that Dr. Toor found by limiting Christopher to only "occasionally climb[ing]

12

ramps and/or stairs, balanc[ing], stoop[ing], kneel[ing], crouch[ing], and crawl[ing and] never climb[ing] ladders/ropes/scaffolds." *Id.* at 29.

Christopher also argues that the ALJ's "failure to explain how he reconciled" the RFC with Dr. Toor's opinion warrants remand. *See* Docket Item 6-1 at 8–9. But "[a]n ALJ does not have to state on the record every reason justifying a decision," *Valdes-Ocasio v. Kijakazi*, 2023 WL 3573761, at *1 (2d Cir. May 22, 2023) (quoting *Brault*, 683 F.3d at 448); rather, so long as an ALJ's decision provides "an adequate basis for meaningful judicial review . . . and is supported by substantial evidence," there is no error, *Cichocki*, 729 F.3d at 177. ("[R]emand is not required where the evidence of record permits [the Court] to glean the rationale of an ALJ's decision." (citation modified)). And that is precisely the case here.

In sum, the ALJ appropriately addressed Dr. Toor's opinion and findings, and the RFC limiting Christopher to light work with other restrictions accounted for the limitations in Dr. Toor's opinion. *See* Docket Item 4 at 29. Because the ALJ was "entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole," *Matta*, 508 F. App'x at 56, and because the ALJ did just that, his decision was supported by substantial evidence. This Court will not second-guess it. *See Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010).

## **CONCLUSION**

The ALJ's decision was not contrary to the substantial evidence in the record, nor did it result from any legal error. Therefore, and for the reasons stated above, Christopher's motion for judgment on the pleadings, Docket Item 6, is DENIED, and the

13

Commissioner's cross motion for judgment on the pleadings, Docket Item 9, is

GRANTED.  The complaint is DISMISSED, and the Clerk of Court shall close the file.


            SO ORDERED.

Dated:        June 29, 2026
              Buffalo, New York



                                        /s/ Lawrence J. Vilardo
                                       LAWRENCE J. VILARDO
                                       UNITED STATES DISTRICT JUDGE